Mr. Angellari, please proceed when you're ready. Thank you, Your Honor. May it please the court, Frank Angellari for Global IP Holdings, which is a, it owns the own property for a tier one auto supplier in Michigan. We believe the board erred because the particular material recited in the claim for the composite panel is not critical or important to the claimed invention. If you don't mind, can I direct you to something I want to talk about? Yep. On appendix page six of the board's opinion, I am very troubled by the regardless sentence. Thus, regardless of the predictability of results of substituting alternatives or the actual criticality of thermoplastics in the overall invention, appellant specifications will undergo. I guess my problem is I think this is an absolutely inaccurate statement of law by the board. Having said that, which of course is a friendly comment for your purposes. Having said that though, does the board's opinion still require reversal or is there enough here otherwise with regard to all the facts? I believe it requires reversal for two reasons. One is I think you have to apply the methodology, so when there's an improper methodology as a matter of law, at the very least I think we're entitled to it. Yeah, but if all the facts are otherwise clear and under the correct methodology, the result would be the same, which I'm trying to ask you to help me understand why that's not true here. You're asking me why is it untrue under the correct methodology? Yes. Because there's no evidence that it's critical. In fact, the evidence is strong that it's not critical. The specific material... The examiner found differently, right? I don't know that the examiner actually addressed criticality. Okay. Did the board address criticality or did the board just say regardless of criticality, there's no written description support here? Our view is the latter, that they did not address criticality and they only said regardless of criticality, there's no written description support because in their view, the spec only cites thermoplastic. However, the thermoplastic reference is actually... It only comes up twice in the detailed description. Once with respect to how it's made and a second time in the context of... And that's at... That's at... Appendix... It's column four, lines 35 to 51, talks about how it's typically manufactured. And then at column five, lines 19 to 25, it talks about thermoplastic again. This is the detailed description I'm talking about and says that it can be... It further limits it as being polypropylene or woven glass fiber fabric. Do I understand your position to be, well, it's true that the specification only discusses thermoplastic and doesn't say that there could be something else? That the specification should not be, well, one of ordinary skilled in the art wouldn't read the specification and think that's all the inventor came up with, all that was in his possession? Yes. And that's reinforced by, for example, the statement of reasons for allowance, which focus on the living hinge feature of the invention. That's at appendix 370, 371. So the point is, you got to look at what the invention is. The invention focuses on an improved living hinge. In the background, it talks about the fact that in the prior art, these were made with thermoplastic materials with the layering and the reinforcing ribs. And if you look at figure four, the way it's described, they cut it to make a living hinge base that was where the material itself was flexible, the panel itself was flexible. This invention gets around that and creates a living hinge based on the covering layer, the fabric. And when you focus on the fact of the living hinge, the fabric living hinge or the covering layer living hinge is the invention, then the particular material inside the fabric is essentially not even, it's almost irrelevant, certainly not critical. The appendix site that I cited to you, appendix 370, 371, it's an examiner's statement of reasons for allowance. I know you're looking at me puzzled. Why would you have reasons for allowance? It was rejected. That's reasons for allowance if we cured the written description problem. So from the standpoint of the prior art, if you look at 370, 371, the examiner is basically saying, hey, this living hinge is patentable if you've got written description. So I say that because I think the examiner is endorsing our view, which is that the invention here is really about the improved living hinge, which makes the thermoplastic plastic issue irrelevant. Do you think we can decide that, though? I mean, as an appellate court, even if we were to agree with you, wouldn't we have to remand so that that could be determined by the board in the first instance? We're not in the position to decide, as a matter of fact, the criticality of thermoplastic. That's fair, and I think we're entitled to at least a remand, but I think that there is no substantial evidence of criticality, which is why you could reverse. The examiner doesn't point to anything. The board doesn't point to anything. Well, the examiner on page 369, Judge Stoll had asked you earlier whether or not the examiner made a finding about criticality, and you said you didn't think that the examiner had done that. I guess, for me, page 369 feels like it's pretty close to a finding on criticality by the examiner, because the examiner says basically there are only two types of material that have routinely been used, right? Thermosetting materials and thermoplastic materials, and then he explains, or he or she, I don't know, but they say, quote, this fact flies in the face of applicants' argument that the disclosed species of thermoplastic is not critical to the invention. So it kind of feels like the examiner is making a criticality finding. So let me clarify what I mean by that. The only thing supporting the examiner's criticality finding to the extent they have made it is the fact that we recite thermoplastic. I think you need to do more in the cases where... So if all the examiner has, and has cited nothing else, is the fact that you identify a particular species and don't mention the other species, but you don't say anything about why that particular species ought to be the one used as opposed to other species, then that's not enough to conclude criticality. Could you just mention one species of all those species? Yes. Mentioning only one species is what triggers the criticality analysis. So you can't resolve the criticality analysis by saying you only mentioned one species. It's what implicates the need to go into the criticality analysis is the fact that you only mentioned one. The fact that you only mentioned one can't be dispositive of it or that would be the end of the inquiry. Yes, that's exactly our position. OK, I understand. But let me go back, because I think you've got me. So let me go back to where Judge Stoll was, which is, can we make this decision on appeal or do we need to remand? Written description is a question of fact. Criticality is a question of fact. I mean, yes, the examiner hinged his or her criticality argument, it seems, on simply the absence of mention of the other type of species that could have been used. But how do I know that when we tell them that wasn't enough, that there isn't more that the examiner would then be able to proffer? That is fair. But what we do know is that the reasons for... I don't know this technology. Despite what appears to be relative simplicity, I don't understand the technology. I mean, I understand, but... I'd like to add something, too, which is that in the background of the invention section of your specification, there's something about cold pressing and then things about how, you know, the prior art used the thermoplastic. I can't tell from this discussion, with my level of skill in the art, whether this discussion is suggesting that there's some advantage of using, you know, the thermoplastic. I can't tell. And it might be there that somebody else would see. That's one of the things that would make me reluctant to make a fact finding. Do you have a response to that? I understand the Court's reluctance to make fact findings, and, in fact, we even put in our brief that we get that. I think it's fair, though, also... But our position is simply that there's no substantial evidence in the record that anyone's pointed to, not even on appeal. The only thing that's been pointed to on appeal, in terms of substantial evidence, is, back to Judge Moore's question, the fact that it's the only reference. So at the very least, my colleagues haven't pointed out anything that's a substantial evidence to support it, so, therefore, we believe you can determine that there's no substantial evidence. You don't even need to make a finding because there's been no evidence to support a criticality finding. But the Board didn't address the examiner's finding, and, instead, the Board said, regardless, it doesn't matter. Absolutely. The Board did not... Do you agree, on a separate point, that the test for whether there's written description support or not isn't whether something's critical. However, when somebody says, hey, look, this isn't even critical, that's a relevant factor that has to be considered when you determine whether a person of ordinary skill in the art reading this specification would have thought the inventor was in possession of the invention or not? I agree the test is not criticality, per se. There is a case from this court, Peters, which we cite at length, and its precedent, stare decisis, and it goes on the proposition of criticality. That doesn't make the test, but if it's very clear that a particular feature that's disclosed, a particular species, is not critical. In fact, here, we're saying the genus isn't critical to the invention. In other words, whether it's plastic or thermoplastic, the material itself is not critical. So, therefore, because it's not critical, and the clear evidence of record is it's not critical, then the reasonable person that's conveyed of skill, the standard test applies because of the absence of any evidence of criticality. But I'm not suggesting that criticality is the new test. It's just that when there's clear evidence that it's not critical, then it's reasonably conveyed to the person of skill in the art that the genus is supported by the species. Mr. Angiolari, I think we have your argument. Why don't you save the rest of your time for rebuttal, and let's hear from Ms. Kaperhan. Can you tell me how you say your name? Kaperhan.  Good morning, Your Honors. May it please the Court. I would like to address the point that you brought up, whether there is enough here to otherwise affirm the decision below. And there is. You pointed to APPX-369, which are the examiner's findings made below. And what the examiner pointed to is the fact that even though global IP had presented evidence that other types of plastic, including thermosetting plastics and thermoplastics, were used to fabricate load floors, the global IP had not shown that these types of plastics were interchangeable. And global IP also, the fact that one of skill in the art would have known that multiple types of plastics were available, yet global IP's inventors specifically chose, and deliberately chose, to limit their invention to thermoplastic skins and cellular... You're saying they had the burden of showing that another kind of plastic would work? They had to show that in their specification or where did they have to show that? Sure. Well, once the examiner established the prima facie case here, which the examiner did below, the examiner first looked at what the broad claims... But you agree the board didn't address this point, right? The board did not bless the examiner's fact-finding, right? Well, the board did point to all of the examiner's fact-findings, including this criticality... I understand that. But that was not my question. My question isn't, did the board repeat the examiner's fact-finding? My question was, what did the board say about the examiner's fact-finding? The board said that regardless, even, of this evidence that was shown below, that global IP had not shown possession of the invention. Because it wasn't within the four corners of the specification. It was not within the four corners. Do you think that's a correct statement of the law? I think it's inartfully worded, and I think, if anything, it's harmless error here, because what is... First, let me back up. The test is whether one of scale in the art would recognize based on the disclosure that the inventors possessed the claimed invention. So that is the test. And that's the test that was articulated by this court in Ariadne. Now, whether or not a disclosure of a specific species also shows that the inventor had possession of the broader genus, and whether to determine that, you first do look at the specification. Look at the four corners of the specification. But you also determine whether one of scale in the art would have known that the broader genus was predictable, and whether it was not critical that only the species was identified. I think that's what they submitted evidence on. Correct. That is what they submitted evidence on. But what the examiner found, based on that evidence, was that in fact, they had not shown that it was interchangeable to be able to use different types of plastics. And that is partly because Why is it okay for us to say that it's fine, we can just go right to the examiner's determination, it doesn't matter that the board didn't address this? I think here it's fine because overall the evidence as a whole shows that global IPs, inventors, did not have possession of the broader genus. How can we make that determination without knowing whether the answer to the criticality question? Well I think the examiner does give you the answer to the criticality question. No, but the board didn't bless that. You just want us to accept it. The board I think the board was focused on what the specification disclosed, what the four corners of the spec disclosed. And here the four corners of the specification only disclosed using thermoplastic components, fabricated using a thermoplastic method. That's not our law. Our law isn't just look at the four corners of the specification and ignore the knowledge of one of ordinary skill in the art. When you're trying to determine whether one of ordinary skill in the art reading the specification would have thought the inventor was in possession of the claimed invention. That's not how our law works. Well that is correct. But why isn't that an error that should be such that we should vacate agreement? Sure, because here there is enough to find that if the board had applied the proper determination here, here there's enough to find that the species was not critical and that the alternatives were not predictable to one of skill in the art. The problem is that's all fact finding. If that were a legal question, you'd be on much more sound footing. But since that's a fact question, I just don't think I can do that on a field. But the examiner did make those fact findings. Yes, but the closest the board came, which isn't really adopting them, is laying out all arguments and saying he thinks the examiner has better arguments. Well, the examiner is like, not enough! Right, I will say that. I'm a little nervous about what you're asking me to do, because it may be right and it may be what happens at the end of the day in terms of the outcome, but I just don't think that it's my role to do it. Well, I will also say that it is often the case that a disclosure of a single species does not mean that the inventor has possession of the broad genus. That's not always the case. And that's clear from cases such as Tronso, ICU Medical, and Curtis. I think those cases have shown that you take into account whether it would have been predictable for the other types of species to be interchanged within the claimed invention. But the board decision here says, regardless of the predictability of the results, because the specification doesn't disclose something other than thermoplastic, that's all the inventor is entitled to. Well, I think what the board was really looking at there was the totality of the evidence that was presented. And based on the totality of the evidence, global IP has not shown criticality or that the alternative species were interchangeable. And because of that, they have not shown that the other species would be predictable options for one of scale and the art upon reading that disclosure, upon reading the four corners of the disclosure of the 2-3P patent. Is there anything else that you want to add? We definitely understand your argument. And I think you understand where we are, too. So, anything else? I think the only additional thing I would say is that one of scale and the art would have understood that different types of plastics could be used. But here, the inventors made the specific decision to limit their invention to thermoplastic components and the only method that's disclosed to fabricate this vehicle load floor is a thermoplastic method. And that's clear from the four corners of the specification. To what extent does it matter that the patent Appendix 24 Column 1 begins to discuss the prior art and the second paragraph that I'm referring to is paragraph 33, such a method is particularly advantageous because of the fact it goes on and talks about the advantage of using thermoplastic. What impact does that have on the board decision? I think that's compelling here. Because the inventors recognized that a thermoplastic method is advantageous because the vehicle load floor could be fabricated in a single step. And if they had used thermosetting plastic, for instance... Does this take it out of the species genus argument? I think it does. Because it shows that it wouldn't be predictable for one of ordinary scale and the art to use the method that's disclosed with thermosetting materials. And that's because thermosetting materials cannot be melted and cannot be formed using cold form molding. So because of that, I think that is indicative of showing that it's not only critical, but the other species would not be predictable to one of ordinary scale and the art. And also one last thing I would like to mention is that we're only talking about thermosetting and thermoplastic plastics but the applicant repeatedly said in its submissions to the examiner that this species is broad. They said it could include thermosetting plastics and thermoplastics, but there's no indication that there aren't other types of plastics also that are encompassed by the term plastic. So I think the fact that they're trying to broaden their claim to include various species of plastics when they themselves have only disclosed thermoplastic components and a thermoplastic method which is advantageous for fabricating the vehicle low-floor I think that is compelling in view of all the evidence below. If there are no further questions, I ask that you adjourn. The court is adjourned. Caprahan? Hand? Hand. Caprahan. Right? Caprahan? Got it. Alright. Go ahead, Mr. Angiolari. We've got a little bit of time. I was just going to answer Judge Reina's question unless anyone else on the court has questions. Your Honor, I don't think that the prior art description is relevant to this because it's a prior art method of making the panel that's inside the fabric layer that's really cleaned. And there's nothing that talks about the particular structure of that panel impacting the invention, which is a living hinge that's created by the perimeter fabric or the covering layer, it's called. It's actually in a spot where there is no structure. I considered that argument but it seemed to me that what the inventor is doing in the pen is adopting the prior art conventional way of let's say doing something and here it's advantageous to use thermoplastic and it seems to me that upon making that decision it's a consideration of preference. I prefer thermoplastic here because it's advantageous. This has been shown and proven out by the prior art so that part I'm going to adopt. So it seems to me that I just think it has a determinative type result on whether we have a species genus situation here at all. I'm sorry, I don't understand the last part of your question about whether we have a species genus situation at all. If the pen itself identifies thermoplastic as being advantageous then what does it matter that there's other species that could be used as well? It matters because the advantageous aspects have nothing to do with the claimed invention. Because the claimed invention is focusing on But it goes to the criticality argument. It's not critical because the advantages that are described in the background the prior art method of making don't provide any benefit to this claimed invention because the claimed invention has to do with the covering layer and in particular a portion of the covering layer where there is no panel whatsoever. So if you look for example at figure 6 it's got the panel we're talking about on the bottom and then the cover panel which is shown vertically the focus of the invention is 44 where the covering layer comes together at a point where there is no panel whatsoever which is why we say definitionally the structure of the panel is certainly not critical to the invention and arguably it's virtually irrelevant to the invention because the invention is focusing on a place where there's no panel at all. Have I answered your question? Unless anyone else has any other questions I will Thank you Mr. Angelari I thank both counsel for their argument the case is taken under submission.